UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR AMTRUST BANK,

                Plaintiff,

      v.

PANKAJ MALIK, et al.,

                Defendants.

Case No.:  09-cv-4805 (KAM)(JMA)


**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR SANCTIONS, INCLUDING AN ADVERSE INFERENCE AND COSTS,
AGAINST DEFENDANTS PANKAJ MALIK AND MALIK & ASSOCIATES, P.C.**


THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, New York 10017
212-344-5680

*Attorneys for Plaintiff Federal Deposit
Insurance Corporation as Receiver for
AmTrust Bank*

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ............................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 3

    A.  Plaintiff's Claims and Allegations Against the Malik Defendants ............................... 3

    B.  The FDIC-R's Unsuccessful Efforts to Obtain Document Discovery ......................... 4

    C.  The Malik Defendants' 30(b)(6) Deposition ............................................................. 6

    D.  Evidence was Lost Because The Malik Defendants Were Indifferent To Their Discovery Obligations. ........................................................................................ 7

        1.  Malik Had No Written Litigation Hold Or Instructions To Retain Electronic Documents ............................................................................... 7

        2.  Malik Had No Record Retention And Destruction Policies Implemented Upon Receiving Notice; No Suspension Of Destruction ............................. 8

        3.  Malik's Computers Were Thrown Out ..................................................... 9

        4.  Malik's Yahoo! Emails Were Not Retained By Malik and Deleted .......... 9

        5.  The Malik Defendants Destroyed Internal Email Communications .......... 10

        6.  Email Communications Between the Malik Defendants and Defendants in Default Were Destroyed .......................................................................... 10

    E.  Further Discovery Would Be Futile; Court Action Is Needed Now .......................... 11

III.    ARGUMENT ............................................................................................... 11

    A.  Legal Standard for Spoliation ............................................................................. 11

    B.  As AmTrust's Attorney, The Obligation To Preserve Arises Even Before Receiving any Notice of Claims and Certainly No Later Than Such Notice ............................... 13

    C.  The Malik Defendants Were Grossly Negligent and Had a "Culpable State of Mind" ...................................................................................................... 14

    D.  The Destroyed Evidence Is Relevant and the Malik Defendants' Gross Negligence Gives Rise to a Presumption of Relevance and Prejudice as a Matter of Law in Any Event. ......................................................................................................... 16

IV.     THE MALIK DEFENDANTS WERE GROSSLY NEGLIGENT AND DILATORY IN REPORTING THE BACKUP FAILURE .......................................................... 18

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Byrnie v. Town of Cromwell, Bd. of Educ.,*
    243 F.3d 93 (2d Cir. 2001)................................................................................13

*Chan v. Triple 8 Palace, Inc.,*
    No. 03 CIV 6048(GEL)(JCF), 2005 WL 1925579 (S.D.N.Y. Aug. 11, 2005)............12, 14, 15

*Einstein v. 357 LLC,*
    No. 604199/2007, 2009 WL 4543044 (N.Y. Co. Comm. Div. Nov. 12, 2009) ....................15

*Kornisch v. U.S.,*
    150 F.3d 112 (2d Cir. 1998)................................................................................13

*Metropolitan Opera Ass'n v. Local 100 Hotel Employees and Rest. Employees Int'l*
    *Union,* 212 F.R.D. 178 (S.D.N.Y. 2003) ...............................................................14

*M&T Mortgage Corp. v. Miller,*
    No. 2002-cv-5410 (NG)(MDG), 2007 WL. 2403565 (E.D.N.Y. Aug. 17, 2007)............12, 16

*In re NTL, Inc. Sec. Litig.,*
    244 F.R.D. 179 (S.D.N.Y. 2007) ..................................................................7, 14, 16

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
    685 F. Supp. 2d 456 (S.D.N.Y. 2010)............................................................... passim

*Residential Funding Corp. v. DeGeorge Fin. Corp.,*
    306 F.3d 99 (2d Cir. 2002)......................................................................... passim

*Turner v. Hudson Transit Lines, Inc.,*
    142 F.R.D. 68 (S.D.N.Y. 1991) ..........................................................................13

*West v. Goodyear Tire & Rubber Co.,*
    167 F.3d 776 (2d Cir. 1999)..........................................................................11, 12

*Zubulake v. UBS Warburg LLC,*
    220 F.R.D. 212 (S.D.N.Y. 2003) ..................................................................11, 14, 15

*Zubulake v. UBS Warburg LLC,*
    229 F.R.D. 422 (S.D.N.Y. 2004) .........................................................................18

**Federal Statutes**

Fed. R. Civ. P. 26 ...................................................................................................14, 19

Fed. R. Civ. P. 37 ......................................................................................................1, 11

**Local Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York**

Local Civil Rule 1.3(a) ................................................................................................15

**Miscellaneous**

NY Comm. on Prof. and Judicial Ethics, Formal Opinion 2008-1, *A Lawyer's Ethical Obligations to Retain and Provide a Client with Electronic Documents* (July 2008).............13

This memorandum is submitted in support of the Motion of plaintiff Federal Deposit Insurance Corporation ("FDIC-R") as Receiver for AmTrust Bank ("AmTrust"), pursuant to Fed. R. Civ. P. 37, for sanctions, including an adverse inference and costs, against Defendants Pankaj Malik ("Malik") and Malik and Associates, P.C. (the "Malik Firm") (collectively, the "Malik Defendants"). The sanctions are warranted because the Malik Defendants destroyed evidence, in the form of personal computers and electronic documents, and because the Malik Defendants breached their obligations to preserve evidence relating to the 26 residential mortgage loans at issue in this action (the "Subject Loans").

## I.    **PRELIMINARY STATEMENT**

The Malik Defendants failed to retain electronic documents relevant to the Subject Loans (particularly internal emails and emails to third parties involved in these transactions), disposed of computers used in these transactions and then failed to reveal that evidence was "lost" or destroyed until well into discovery in this matter -- long after deficient discovery responses were provided. In fact, the Malik Defendants only admitted that evidence had been destroyed when confronted with the absence of electronic records in their discovery responses. Plaintiff seeks appropriate sanctions for this misconduct.

Malik and the Malik Firm represented AmTrust in closing each of the Subject Loans. This case involves a scheme to defraud AmTrust in connection with these twenty-six (26) separate residential mortgage loans, over the course of the last eight months in 2008, with losses totaling more than $9 million. The Malik Defendants largely communicated by email regarding the Subject Loans with AmTrust, title companies, brokers, sellers' attorneys, and other parties involved in the Subject Loans. (Transcript of 30(b)(6) Deposition of Pankaj Malik, "Malik Tr.",

Kim Decl. Ex. 1, 177:21-178:16.)[1]  The Malik Defendants acknowledge such communications with (1) unknown third parties; (2) each other internally; and (3) with other defendants in this case (including those in default).  Many of these communications would be relevant to the FDIC-R's claims and, as the Malik Defendants admit, are lost forever.  This evidence was lost because the Malik Firm allegedly did not have a functioning backup system for its computers for almost 7 years, from late in 2003 until early 2010.

The FDIC-R noticed a 30(b)(6) deposition of the Malik Defendants concerning issues of document preservation.  In that deposition, Pankaj Malik made clear that the Firm had failed to take basic steps to retain documents pertaining to the Subject Loans.  Malik did not instruct her personnel to preserve (*i.e.*, cease deletion of) pertinent electronic or other documents, even *after* receipt of notice of claims asserted in this action, and she (and her counsel in this action) claimed not even to be familiar with the term "litigation hold."  (*See, e.g.*, Malik Tr. 61:13-16; 68:22-24; 69:25-70:5; 141:16-142:9; 168:12-169:16; 173:11-16; 174:2-4: 174:21-175:2; 175:9-11; 180:7-181:23.)  Malik confirmed that hard drives from office computers used during the period at issue had been destroyed, that the Malik Defendants had known of an inability to retrieve emails since 2009, if not much earlier, and that the backup system failure was not disclosed to the FDIC-R until December 2010.  Malik refused to answer questions seeking to determine whether the Malik Defendants knew of the issue *before* closing the 2008 AmTrust loans, and refused to answer questions about other litigation in which the Malik Defendants were involved during the 2003-2009 timeframe, and in which presumably they were required to produce electronic documents.

FDIC-R has been deprived of evidence to support its claims, including the identities of third parties who were involved in the scheme to defraud AmTrust.  Due to the Malik

---

[1] "Kim Decl." refers to the Declaration of Sunny H. Kim, dated September 16, 2011.

Defendants' failure to preserve electronic data, the FDIC-R can never obtain this information. The record plainly reveals that the Malik Defendants' spoliation of evidence was, at minimum, grossly negligent as a matter of law, and warrants sanctions in the form of an adverse inference instruction, and costs.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Claims and Allegations Against the Malik Defendants

AmTrust hired the Malik Firm to represent and protect its interests in connection with each of the 26 Subject Loans. (*See* Complaint, Kim Decl. Ex. 2, ¶¶ 2, 14.)[2] Defendant/Attorney Pankaj Malik is the principal of the Malik Firm. (Malik Tr. 14:20-15:15.)

The Malik Defendants breached their duties because they failed to identify risky "flip" transactions (where the "seller" at closing was not the actual owner of the property) and other potential signs of fraud, and because they failed to stop closing loans that appeared to be associated with a fraudulent transaction (these obligations arose both under New York's ethical rules applicable to attorneys, and AmTrust's Master Closing Instructions with which these Defendants had promised to comply). (*See* Ex. 2, ¶¶ 13, 44.)

The Subject Loans were closed by the Malik Firm between April 16, 2008 and December 12, 2008. (*Id.* ¶ 4.) When AmTrust discovered the fraud, it sent the Malik Defendants written notices of a "potential professional negligence claim" against them, and requested copies of certain records with respect to closings of the Subject Loans (copies of the notices are attached to the Kim Decl. as Ex. 4). Though they received the notices as early as June 2009, the Malik

---

[2] Plaintiff asserts three claims against the Malik Defendants: (1) attorney malpractice; (2) breach of fiduciary duty; and (3) conversion. The claims include allegations that the Malik Defendants failed to account for AmTrust's funds, failed to provide requested documents, failed to ensure recording of the mortgage documents, and failed to comply with the Closing Instructions and regulations under the Real Estate Settlement Procedures Act. The Complaint was served upon the Malik Defendants on November 9 and 10, 2009 (*see* Kim Decl. Ex. 3).

Defendants still failed to ensure preservation of relevant documents and did not disclose their failure until 2010.  (*Id.*)

**B.     The FDIC-R's Unsuccessful Efforts to Obtain Document Discovery**

As described below, the Malik Defendants were aware of problems with their document retention in 2009.   Nonetheless, when they served their Initial Disclosures in April 2010 and responded to Plaintiff's First Set of Document Requests on October 4, 2010 (Kim Decl. Exs. 5 and 6), they concealed the issue.  No documents were produced, and rather than mentioning any difficulty with retention or retrieval of emails or other electronic documents, the Malik Defendants simply said that they were "undertaking a search for the requested documents". (Kim Decl. Ex. 6 at p. 5).  In response to certain requests, the Malik Defendants said they would provide the closing files for the Subject Loans and that "[u]pon information and belief, Defendants are not in possession" of any other responsive documents.  (*Id.* at p. 6)

Moreover, in the Malik Firm's October 2010 response to Plaintiff's  Interrogatory No. 10, which sought description of their record retention procedures was outright false:  "Subject to the General Objections set forth herein, Defendant maintains original files in its office for a period of six (6) years."  (Kim Decl. Ex. 7 at p. 11.)

In November 2010, the FDIC-R inquired about the absence of electronic documents, such as emails, in the Malik Defendants' production, and inquired when such materials would be produced.  (Kim Decl. Ex. 8.)  At that time, only 27 emails had been produced by the Malik Defendants.[3]  The Malik Defendants responded two weeks later by stating their production was "complete".  (Kim Decl. Ex. 9.)

---

[3] 89 emails were eventually produced, 58 of which were *from* AmTrust and not specific to the Malik Firm or the Subject Loans.  (*See, generally,* Kim Decl. ¶ 16.)  No explanation was provided as to why those emails had been preserved and why other relevant communications had not been.

The FDIC-R then requested confirmation that a thorough search for electronic documents had been conducted. (Kim Decl. Ex. 10.) On December 21, 2010 - *18 months* after receipt of AmTrust's first notice of claim – the Malik Defendants' counsel disclosed:

> The Malik Defendants have conducted a thorough search for responsive electronic documents on its computer network. In doing so, we have learned that Malik & Associates, P.C.'s back-up computer system was improperly installed. As such, *any* electronic communication during the time period that the Subject Loans were closed is irretrievable. (Kim Decl. Ex. 11; emphasis added.)

This was the *first notice* of the supposed backup failure on the Malik Firm's servers and the significant spoliation of material evidence in this case. (*Id.*) Then, in January 2011, the Malik Defendants represented that an "IT consulting firm" was investigating whether emails from 2008 could be accessed, and later reported that the effort was "successful". (Kim Decl. Ex. 12.) On February 7, 2011, following the FDIC-R's further inquiry, counsel for the Malik Defendants reported that a "consultant" had *not*, in fact, been retained to conduct searches for electronic documents. (Kim Decl. Ex. 13.) Moreover, it was announced that the search for electronic documents was complete, and that "no electronic documents/communications... could be retrieved... through 2009":

> Approximately one (1) year ago, it was discovered that no back-up system [of the Malik Firm's computer system] was put in place. Thus, there are no electronic documents/communications that could be retrieved from the server from the time of installation through 2009.

(*Id.*)

The purposeful, misleading and protracted delay by the Malik Defendants in revealing the loss of virtually all electronic communications regarding these claims warrants imposition of sanctions by itself (and whether or not related to the act of destruction of evidence). *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 110 (2d Cir. 2002).

**C.     The Malik Defendants' 30(b)(6) Deposition**

On April 20, 2011, the FDIC-R deposed Pankaj Malik, who was the designated 30(b)(6) witness to testify regarding the Malik Firm's preservation and production of electronic documents. Pertinent excerpts from the transcript of the deposition are attached to the Kim Decl. as Ex. 1.

Malik was an inadequate 30(b)(6) witness.[4]  She did not speak with (and could not identify the name or location of) the IT vendor that installed her system, although it was the sole IT vendor for the Malik Firm from 2003 through 2009. (Malik Tr. 49:16-50:4, 50:11-14.)  On instruction of counsel, Malik improperly refused to answer approximately 20 clearly relevant questions concerning document retention policies and retrievals, searches for AmTrust documents, and types of emails received by employees who worked on the Subject Loans, all of which were well within the scope of the 30(b)(6) Notice. (*See, e.g.,* Malik Tr. 121:8-126:8, 128:7-129:3.)

Malik's assertion that she only learned of the backup failure some time in 2009 (Malik Tr. 83:5-86:10; 96:6-98:17), after closing the 2008 AmTrust loans, is not credible.  Indeed, Malik acknowledged that someone at her firm "must" have tried to find an email that they had deleted or to retrieve a document after a crash (Malik Tr. 196:4-197:15) sometime in the period between 2003 and 2008, which would have revealed the absence of an operating backup system. Further, Malik and her firm were sued and were the subject of discovery requests during the same period, which also would have revealed the absence of an operating backup system prior to closing the 2008 AmTrust loans.  Malik, however, refused to answer any question concerning *other* litigations in which her firm had been a defendant, including those matters *prior* to the

---

[4] Malik's preparation for the deposition was minimal, spending "a very small part" of a single 90-minute meeting talking with a few employees and a current IT vendor about a few of the subjects specified in the 30(b)(6) Notice. (Malik Tr. 45:4-49:15.)

2008 closings of the Subject Loans. (Malik Tr. 153:25-160:17.)  Such refusals further support the sanctions sought by the FDIC-R, including an adverse inference, under *Residential Funding Corp., supra.*  306 F.3d at 107-13.

Malik also demonstrated an indifference to her obligations as a litigant and an attorney. Significantly, though notices of claim were sent in 2009, Malik acknowledged that she does not recall *ever* instructing staff to preserve or collect emails requested by AmTrust or the FDIC-R. (Malik Tr. 180:7-181:23.)  She testified that no records retention policy was in place to suspend the destruction or deletion of documents at her law firm, despite the duty to preserve her client's documents and despite the notices of potential litigation regarding the Subject Loans.  (*See* Malik Tr. 61:13-16; 68:7-24; 69:25-70:5.)  Computers of Malik Firm employees who worked on the Subject Loans were destroyed or assigned to other employees and not searched.  (*See* Malik Tr. 69:25-70:5; 141:16-142:23.)  Malik at times worked on the Subject Loans from her Yahoo! email account on her home computer, yet no such emails were produced, and her home computers also had been destroyed.  (Malik Tr. 216:20-217:4; 221:2-25; 223:16-224:9.)

**D.  Evidence was Lost Because The Malik Defendants Were Indifferent To Their Discovery Obligations.**

**1.  Malik Had No Written Litigation Hold Or Instructions To Retain Electronic Documents**

The Malik Defendants did ***not*** issue a litigation hold, and testified "I don't remember" ever instructing employees to retain electronic documents relating to AmTrust even after she received the notices of claims. (Malik Tr. 180:7-181:23.)  The lack of a litigation hold or comparable instruction was deliberate, as well as grossly negligent.  Thus, the relevance of the spoliated evidence, and prejudice to Plaintiff, is presumed on that basis alone. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 685 F. Supp. 2d 456, 465-66 (S.D.N.Y. 2010); *see also In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 198-99 (S.D.N.Y. 2007).

In a feeble attempt to excuse this failure, both Malik and her counsel repeatedly claimed that they had never heard of a "litigation hold." (*See* Malik Tr. 168:12-169:16; 173:11-16; 174:2-4; 174:21-175:2; 175:9-11.)  The assertion is not credible, however, as both Malik and her counsel advertise themselves as experienced commercial litigators and officers of this Court. (*See* http://www.malikimmigrationlaw.com/Attorneys/ ("[O]ur firm is led by attorney Pankaj Malik, who has an extensive background in a wide range of legal areas including . . . complex commercial litigation matters.") (Kim Decl. Ex. 14)).  (*See also http://www.fkbllp.com/about-fkb.html* ("Applying our substantial trial and appellate experience and our vast experience and knowledge in our respective practice areas, [Furman Kornfeld & Brennan] defend[s] lawyers, medical and healthcare professionals . . . and other professionals, as well as general liability claims of all types.") (Kim Decl. Ex. 15)).  Even if believed, moreover, the assertion merely underscores Malik's gross negligence in the matter at issue on this motion.

### 2.   Malik Had No Record Retention And Destruction Policies Implemented Upon Receiving Notice; No Suspension Of Destruction.

Malik had contractual and ethical obligations as closing attorney for AmTrust, and could reasonably anticipate litigation once they began receiving the notices of claim.  Malik testified, however, "We really don't have any specific policies" like "records and management policies and procedures". (Malik Tr. 61:13-16.)  Electronic records and email were deleted randomly; "[t]here is no rhyme or like specific process". (Malik Tr. 69:25-70:5.)

In 2008, there was no policy preventing deletion of emails in any circumstance (while there presently is a policy "that I want hard copies printed out and put in files," it was not implemented until 2010).   (Malik Tr. 179:10-180:3.)   The Malik Firm even disregarded electronic document archiving conventions.  Malik (the Firm's manager and principal of the Firm) does not know how electronic files are archived, who archives files, how the Malik Firm is

billed for archiving, what files are archived, when they are archived (Malik Tr. 72:21-73:22), or even if any archive is in a remote and secure location.  (Malik Tr. 191:19-21.)

### 3.    Malik's Computers Were Thrown Out

The Malik Defendants failed to preserve information from the computers of their employees.  (Malik Tr. 141:25-142:25.)  Instead, computers were discarded, with no one making any effort to determine if they contained relevant information subject to discovery.  (*See* Malik Tr. 214:9-19.)  There was no policy regarding how such hard drives were to be treated.  (Malik Tr. 213:16-24.)

The computers were tossed because "[Malik] was tired of seeing them lying around". (Malik Tr. 213:25-214:8.)  Malik did not recall how many Firm computers were disposed of in 2008 or 2009.  (Malik Tr. 211:19-23.)  She believed one or two additional computers were disposed of in 2010.  (Malik Tr. 210:9-13.)  Malik's home computers, which she also used at times in connection with the Subject Loans, also were discarded, "[i]n the trash," without regard to her duty to preserve data relevant to this litigation.  (Malik Tr. 215:20-216:13.)  Nothing was done with those hard drives prior to the computers being thrown out.  (Malik Tr. 216:9-11.)

Thorough searches of pertinent desktops were not performed.  (Malik Tr. 141:16-24; 146:23-147:4; 150:14-151:9.)  When Malik began receiving notices of claim in 2009, she only asked a paralegal and her then IT vendor to search some emails (*e.g.*, they were not asked to search Malik's office email) (Malik Tr. 150:17-20; 220:5-13), and they were not given a list of employee email accounts, property names or borrowers' names to search.  (Malik Tr. 151:6-152:4; 153:15-19.)

### 4.    Malik's Yahoo! Emails Were Not Retained By Malik and Deleted.

Malik testified that she at times used her personal Yahoo! email account in her work on the AmTrust transactions.  (Malik Tr. 221:4-25.)  Malik testified, however, that she had no

emails regarding AmTrust in her Yahoo! account (Malik Tr. 221:18-25), and no emails were produced directly from Malik's Yahoo! account. (*See generally* Kim Decl. ¶¶ 17, 20.)

Yahoo! emails do not disappear on their own. Only a Yahoo! user may delete or cause the deletion of an email.[5] Thus, if Malik possesses no emails in her Yahoo! account, then it is she who deleted them since, per Malik's testimony, only she had access to her Yahoo! email account. (Malik Tr. 131:17-22.) This also, of itself, warrants the adverse inference sought by the FDIC-R.

### 5. The Malik Defendants Destroyed Internal Email Communications

The Malik Defendants also communicated *internally* by email regarding the Subject Loans and their closings. There are examples of such inter-office communications even in the extremely limited email production that Malik provided. (*See, e.g.,* Kim Decl. ¶ 16.) The vast majority of those emails are now gone, and their content will remain forever unknown. These inter-office emails would likely provide significant insight as to the preparation of loan documents, directions for disbursement of loan proceeds, the way loan transactions (including the improper "flip" transactions) were structured, those persons who were present at closings, the identities of other persons/entities involved in the transactions, as well as other information regarding the mortgage fraud scheme.

### 6. Email Communications Between the Malik Defendants and Defendants in Default Were Destroyed

Finally, the Malik Defendants' communications with other defendants who are now in default also are no longer retrievable. One seller's attorney and five brokers did not answer the Complaint and are in default in this matter. Consequently, these parties have not answered the

---

[5] Yahoo! does not unilaterally delete emails. Deletion requires a user either to (1) choose to move an email to his or her "Trash" folder; or (2) set up certain preferences for Spam email. According to Yahoo!, mail "stays in your account as long as you want it to." Yahoo! Mail Help Topics at *http://help.yahoo.com/l/us/yahoo/mail/yahoomail/basics/basics-39.html;_ylt=Ah3N2zDU1SexKHCwyG_FhqyI7CN4.* (*See* Kim Decl. Ex. 16.)

Complaint and have not engaged in discovery. Malik's actions prejudiced the FDIC-R's ability to recover the email communications that existed between these defaulting defendants and the Malik Defendants.

**E.    Further Discovery Would Be Futile; Court Action Is Needed Now.**

Given the Malik Defendants' assertion that its document production is complete, any further attempt to obtain electronic discovery from the Malik Defendants would be a futile exercise. By reason of their misconduct, which was at minimum grossly negligent, if not willful, the FDIC-R has been denied access to pertinent electronic documents, requiring action by this Court.

## III.    ARGUMENT

Pertinent evidence in the custody of the Malik Defendants has unquestionably been destroyed. The FDIC-R was entitled to expect that the Malik Defendants preserved and produced these documents because they are parties to litigation and because they were AmTrust's attorneys. They did not, and the FDIC-R is therefore entitled to an adverse inference instruction against the Malik Defendants. In addition, the FDIC-R is entitled to its costs and attorneys' fees in connection with this Motion and the 30(b)(6) deposition of the Malik Defendants.

**A.    Legal Standard for Spoliation**

"Spoliation" is the "destruction of evidence or significant alteration of evidence, **or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.**" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("Zubulake IV") (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)) (Emphases added.) It is within the Court's broad discretion, under Fed. R. Civ. P. 37 and the Court's inherent powers, to impose the appropriate sanctions for such misconduct. *Id.; see*

*also West*, 167 F.3d at 779 ("Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation."). "Each case will turn on its own facts and the varieties of efforts and failures is infinite." *Pension Committee*, 685 F. Supp. 2d at 465. A Court may impose a variety of sanctions for the spoliation of evidence, including dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference and/or assessment of attorneys' fees and costs. *Chan v. Triple 8 Palace, Inc.*, No. 03 CIV 6048(GEL)(JCF), 2005 WL 1925579, at *4 (S.D.N.Y. Aug. 11, 2005).

Sanctions for spoliation are warranted where: (1) the party having control of the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed "with a culpable state of mind;" and (3) the destroyed evidence was "relevant" to a party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *M&T Mortgage Corp. v. Miller*, No. 2002 CV 5410(NG)(MDG), 2007 WL 2403565, at *4 (E.D.N.Y. Aug. 17, 2007) (citing *Residential Funding Corp.*, 306 F.3d at 107).

As set forth below, this standard is met: 1) because the Malik Defendants were required to preserve documents both because of their obligations as attorney for AmTrust, and because they were aware of these claims even before the case was filed (but failed to institute a litigation hold or instruct staff to preserve records); 2) because ignoring clear duties to preserve documents constitutes of itself (as a matter of law) the sort of "culpable state of mind" warranting sanction; and 3) because, as a result of these failures, both documents and computers were destroyed. In addition, their purposeful and protracted delay in admitting the destruction of the 2008 emails and the lack of a backup system, their misleading responses to inquiries regarding electronic discovery and their refusal to answer pertinent questions at the 30(b)(6) deposition, demonstrated

the type of "purposeful sluggishness" condemned in *Residential Funding Corp., supra.*  306 F.3d at 110.

**B.    As AmTrust's Attorney, The Obligation To Preserve Arises Even Before Receiving any Notice of Claims and Certainly No Later Than Such Notice.**

A duty to preserve evidence arises when a party ***reasonably anticipates*** litigation and certainly no later than when a complaint is served.  *Kornisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998) (citing *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72-73 (S.D.N.Y. 1991)).  The Malik Defendants could reasonably anticipate being a litigant by June 16, 2009, upon the first notice of claim from AmTrust, if not sooner, and continued as more notices were sent and eventually the Complaint was filed.  (Kim Decl. Ex. 4.)   Yet, at no point did they take steps to preserve evidence, in clear violation of the common law duty to do so.

But their obligation arose even earlier.  In addition to the common law duty to preserve evidence relevant to litigation, the preservation obligation may also arise from statutes, regulations or a court order.  *Pension Committee*, 685 F. Supp. 2d at 466 (citing Fed. R. Civ. P. 37(f) Advisory Committee Note).  Violation of a regulation that requires retention of records can give rise to an inference of wrongful spoliation even if litigation is not reasonably foreseeable, if the party seeking the inference is a member of the class of persons the regulation was intended to protect.  *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 108-09 (2d Cir. 2001).   Ethical obligations binding New York attorneys require preservation of the client's documents and were, in large part, promulgated to protect the client. (*See* Assoc. of Bar of City of N.Y. Comm. on Prof. and Judicial Ethics, Formal Opinion 2008-1, *A Lawyer's Ethical Obligations to Retain and Provide a Client with Electronic Documents* (July 2008) ("a client has a presumptive right to the lawyer's entire file in connection with a representation.")) Accordingly, for the Malik

Defendants, the obligation to preserve commenced not upon the later notice of claims in 2009, but in 2008 when they undertook to represent AmTrust as its attorney.

## C.   The Malik Defendants Were Grossly Negligent and Had a "Culpable State of Mind"

Once the duty to preserve attaches, any destruction of documents is, at minimum, negligent, and a showing of ordinary negligence will satisfy the "culpable state of mind requirement" needed to impose a sanction. *In re NTL*, 244 F.R.D. at 198; *see also Zubulake IV*, 220 F.R.D. at 220. To assess the severity of the sanction, the Court must determine whether a party acted negligently, or was grossly negligent or willful in its misconduct. *Pension Committee*, 685 F. Supp. 2d at 463-64. Behavior that is grossly negligent or in bad faith justifies the severest disciplinary measures. *Metropolitan Opera Ass'n v. Local 100 Hotel Employees and Rest. Employees Int'l Union*, 212 F.R.D. 178, 219-230 (S.D.N.Y. 2003) (sanctioning both counsel and the client under Rules 26(g) and 37).

"'It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance.'" *Residential Funding Corp.*, 306 F.3d at 108 (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991)). Put another way, "each party should bear the risk of its own negligence." *Id.* Therefore, *grossly* negligent conduct "plainly enough" justifies an adverse inference. *Chan*, 2005 WL 1925579, at *7.

In this Circuit, the failure to institute a written litigation hold, of itself, is sufficient to demonstrate gross negligence, because "that failure is likely to result in the destruction of relevant information." *Pension Committee*, 685 F. Supp. 2d at 465; *see also In re NTL*, 244 F.R.D. at 198-99 (finding the failure to preserve documents and ESI relevant to plaintiffs' allegations in the case was "at least" grossly negligent); *Chan*, 2005 WL 1925579, at *7 ("the

utter failure to establish any form of litigation hold at the outset of litigation is grossly negligent.").

The duty to institute a timely written litigation hold was well-established long before the 2008 transactions at issue in this litigation. *See generally Pension Committee*, 685 F. Supp. 2d at 488 (instituting a written litigation hold had become a well-established requirement by 2005). Malik is a licensed attorney who, by her own admission, has an "extensive background" in "complex commercial litigation."[6]  Under examination about the failure to preserve records in this matter, however, Malik made the incredulous claim that "I have been doing litigation for many, many years, maybe not in federal court, but I have never heard of what a litigation hold is." (Malik Tr. 169:13-16; *see also* Malik Tr. 168:24-169:2.)[7]

Malik is an officer of this Court. (Malik Tr. at 9:12-15.) She has an obligation to be familiar with the rules of discovery. *See, e.g.*, Local Civil Rule 1.3(a) of the United States District Court for the Southern and Eastern Districts of New York. "By now, it should be abundantly clear that the duty to preserve means what it says and that a failure to preserve records - paper or electronic - and to search in the right places for those records, will inevitably result in the spoliation of evidence." *Pension Committee*, 685 F. Supp. 2d at 462.

The Malik Defendants' actions establish the level of negligence that supports an adverse inference against them. They failed to institute a litigation hold, did not give an instruction to

---

[6] *See, e.g.*, http://www.malikimmigrationlaw.com/Attorneys/ ("[O]ur firm is led by attorney Pankaj Malik, who has an extensive background in a wide range of legal areas including . . . complex commercial litigation matters.") ). (Kim Decl. Ex. 14.)

[7] The definition and use of the term "litigation hold" has not differed materially between New York state or federal courts, and attorneys practicing in state court are not exempt from these obligations.  A "litigation hold" has been defined in New York as "a term of art generally used to mean the suspension of any routine document 'retention and destruction policy' and the implementation of additional steps to ensure the preservation of relevant documents; typically, however, the term is used in the context of preserving electronically-stored documents such as emails." *Einstein v. 357 LLC*, No. 604199/2007, 2009 WL 4543044, at p. 8 n. 1 (N.Y. Co. Comm. Div. Nov. 12, 2009) (citing *Zubulake*).

- 15 -

preserve electronic documents, and disposed of hard drives and computers. They also at first hid and then purposefully stalled disclosure of the supposed backup failure, and refused to answer questions aimed at eliciting whether they discovered the supposed backup problem earlier. An adverse inference instruction is warranted.

**D.      The Destroyed Evidence Is Relevant and the Malik Defendants' Gross Negligence Gives Rise to a Presumption of Relevance and Prejudice as a Matter of Law in Any Event.**

As a central player in each of the 26 Subject Loans, the Malik Defendants communicated with multiple parties to process title searches and reports, payments to third parties, buyers and sellers, and to record the mortgages, and the communications were largely by email. (Malik Tr. 177:21-178:16.) That evidence, under the control of the Malik Defendants, was destroyed.

The transactions in this case were far from ordinary. They involved "straw" borrowers, phony employment histories, false asset statements, falsified checks, "sellers" that did not acquire title until the moment of the sale, inflated appraisals, and adulterated title commitments. (Kim Decl. Ex. 2, Compl. ¶ 1.) The Malik Defendants' failure to preserve emails with parties involved in the Subject Loans "leads inexorably to the conclusion that relevant records have been lost or destroyed." *Pension Committee*, 685 F. Supp. 2d at 476.

It is settled in this Circuit that upon a showing of grossly negligent conduct, relevance of the destroyed evidence and prejudice may be presumed. *Id.* at 467. No further extrinsic proof is necessary. *M&T Mortgage Corp.*, 2007 WL 2403565, at *9-10 (finding spoliating party acted in bad faith; it is unlikely a business, with the sophistication to understand the significance of the documents destroyed, would throw out important business records); *see also In re NTL, Inc.*, 244

F.R.D. at 200 (conduct was at minimum grossly negligent, thus no further extrinsic proof needed, and adverse inference instruction warranted).[8]

The Malik Defendants' failure to issue an instruction to preserve is sufficient to draw the inference that what was destroyed was relevant.  The dilatory disclosures regarding their supposed discovery of a backup failure, and refusal to answer questions about when it was discovered, are also independently sufficient to support that inference.  *Residential Funding Corp.*, 306 F.2d at 110.  Accordingly, relevance of the missing evidence and prejudice should be presumed.

Nevertheless, the relevance of the lost documentation is illustrated by discovery of a July 2008 email to Kushu Malik, Malik's brother and an employee of the Malik Firm.  (Malik Tr. 134:22-135:5.)  The email, addressed from a third party named Latoya Jones, was produced by defendant NMR, but not by any Malik Defendants.  A copy of this email is attached to the Kim Decl. as Ex. 17.  This email demonstrates that the Malik Defendants had reason to suspect (if not know) that this transaction (Subject Loan for 110-49 167th Street) was tainted by fraud - that there were anomalies with the title for this Subject Loan transaction and it was likely a "flip transaction" because more than one transfer was planned in connection with the closing.[9]  Also, the email reveals that the Malik Firm was to "secure a seller's attorney" for one of the sellers.  Yet, the Malik Defendants *never produced this email in discovery, nor notified* AmTrust about this planned "flip" prior to the closing, as required by AmTrust's Master and Supplemental Closing Instructions.

---

[8] If the Court finds no such presumption then the movant may submit extrinsic evidence to show relevance and prejudice.  *Chan*, 2005 WL 1925579, at *8.

[9] In this email, Ms. Jones appears to be acting as the transaction's broker.  AmTrust, however, believed this mortgage loan to be brokered by defendant Global Financial, Inc. ("Global Financial"), the entity that provided the loan application and other documents to AmTrust for approval and funding.  This email *specifically sets forth* how the person identified as the "seller" on the AmTrust loan documentation would transfer the property to a third party – Nickle Properties – who would then transfer the property to the AmTrust borrower.

There is no copy of this email in the Malik Defendants' production. *See, e.g.*, Kim Decl. ¶ 19. Had this email not been forwarded to NMR, the FDIC-R would never have known about Ms. Jones' involvement in this Subject Loan transaction because the Malik Defendants failed to preserve electronic documents. Nor would the FDIC-R be in possession of important evidence showing the Malik Defendants' knowledge and role in the "flip" transaction.

Even if the Court should find the Malik Defendants were only negligent, the strongest sanctions are warranted because the destroyed documents were plainly relevant and the FDIC-R has been prejudiced as a result of the spoliation. Relevance in this analysis "encompasses not only the ordinary meaning of the term, but also that the destroyed evidence would have been favorable to the movant." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) ("*Zubulake V*").

## IV.   THE MALIK DEFENDANTS WERE GROSSLY NEGLIGENT AND DILATORY IN REPORTING THE BACKUP FAILURE

The Malik Defendants knew of the retention failure no later than 2009. (Malik Tr. 98:18-99:8; 99:18-23.) Yet, they did not notify AmTrust, which was then seeking documents relating to the Subject Loans, and did nothing to investigate or address the problem, *i.e.,* no retention policy was put in place to prevent further deletion; no litigation hold or instruction to preserve was instituted; documents continued to be deleted; and computers were thrown away. That conduct was grossly negligent.

Malik's assertion concerning when the lack of backup system was discovered is also suspect. It assumes that in the years from 2003, when the server was installed (Malik Tr. 112:24-113:2), the Malik Firm never had a system crash; never had to retrieve a document from the server; never had to restore the system or a file; never had to respond to discovery requests that sought the production of electronic documents; never tested the backup system to ensure that

clients' documents were being retained; and never generated a backup log, which would have confirmed the existence of a backup system and whether the backup system was working.[10]

The assumption that none of these things happened is simply not reasonable—indeed, Malik acknowledged just that at her deposition.   (Malik Tr. 196:4-197:15, *see* p. 6, *supra.*)  Also, Malik's dubious assertion that they did not discover the backup system failure until 2009 is further underscored by Malik's refusal to answer questions concerning how the Malik Firm dealt with requests for electronic document discovery in a number of litigations in which she and/or her Firm were named as defendants pre-2008.  (Malik Tr. 159:2-14.)

Although the Malik Defendants knew emails could not be retrieved well before the Complaint was served, the FDIC-R was not informed of the missing documents until the end of December 2010.  (Kim Decl. Ex. 10.)  The Malik Defendants delayed notifying Plaintiff of the preservation issue, despite (1) AmTrust's notices of claims requesting documents (Spring/Summer 2009); (2) the service of the Complaint (November 2009); (3) the Rule 26 Initial Disclosure requirements (April 2010); and (4) the FDIC-R's document requests and interrogatories (August 2010).  More significantly, the failure to ensure documents were being backed up and retained was a willful disregard of the Malik Defendants' preservation obligations, warranting sanctions.

## CONCLUSION

For the foregoing reasons, the FDIC-R respectfully requests that the Court sanction the Malik Defendants by an adverse inference to be applied against the Malik Defendants on a motion for summary judgment or at trial finding that the documents the Malik Defendants destroyed and/or failed to preserve were damaging to the Malik Defendants' defenses and would

---

[10] When asked if she requested a backup log upon discovery that no backup system was in place, Malik responded that she "[had] no idea what those are."  (Malik Tr. 96:23-97:2.)

have established as a matter of fact the allegations of the Complaint, and by assessing the Malik

Defendants the costs and fees incurred by the FDIC-R of this Motion and in the taking of their

30(b)(6) deposition, and for such other and further relief as is just and proper.

Dated:  New York, New York
       September 16, 2011

Respectfully Submitted,

By: _____
    Joseph W. Muccia
    Sunny H. Kim
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, New York 10017
212-344-5680

AND

William W. Jacobs
Thomas L. Feher
Frank R. DeSantis
James L. DeFeo
Laura L. Watson
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114-1291
216-566-5500

*Attorneys for Plaintiff Federal Deposit
Insurance Corporation As Receiver for
AmTrust Bank*

- 20 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2011, I caused to be served copies of Plaintiff's Notice of Motion for Sanctions Against Defendants Pankaj Malik and Malik & Assocaites, P.C., the accompanying Memorandum of Law in support, and Declaration of Sunny H. Kim dated September 16, 2011, with exhibits attached thereto, by electronic mail and U.S. Mail upon the following counsel of record:

Matthew Bryant, Esq
Justin V. Buscher, Esq.
Ohrenstein & Brown, LLP
1010 Franklin Avenue
Garden City, New York 11530
matthew.bryant@oandb.com
mattbryant@nysbar.com
justin.buscher@oandb.com
*Counsel for NMR Advantage Abstract, Ltd.*

Andrew Robert Jones, Esq.
Izabell Lemken, Esq.
A. Michael Furman, Esq.
Furman Kornfeld & Brenan LLP
545 5th Ave., Ste-401
New York, New York 10017
ajones@fkblaw.com
ilemkhen@fkblaw.com
mfurman@fkblaw.com
*Counsel for Pankaj Malik & Malik & Associates, P.C.*

Jonathan M. Cooper, Esq.
483 Chestnut Street
Cedarhurst, New York 11516
jcooper@jonathancooperlaw.com
*Counsel for Acorn Funding Group, Inc.*

William D. Moore, Esq
Law Office of William D. Moore
51020 Main Road
Southold, New York 11971
wdmoore1@optonline.net
*Counsel for SI Mortgage Company*

Jeffrey S. Schwartz, Esq.
The Law Office of Jeffrey S. Schwartz
410 East Jericho Turnpike
Mineola, New York 11501
jeff@jeffreyschwartzlaw.com
jschwartz@ionus.com
*Counsel for Antonietta Russo*

John Housman, Esq.
Housman & Associates, P.C.
150 White Plains Road, Suite 310
Tarrytown, New York 10591
mhousman@hhesq.com
dadhousman@gmail.com
*Counsel for Nicholas A. Pellegrini*

John M. Stravato, Esq.
PO Box 298
Bethpage, New York 11714
jmstravato@aol.com
*Counsel for Artisan Mortgage Company, Inc*

Sunny H. Kim