UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
FEDERAL DEPOSIT INSURANCE CORPORATION
as Receiver for AmTrust Bank,

                        Plaintiff,

        -versus-

                       **ORDER**
                       09-CV-4805 (KAM) (JMA)

PANKAJ MALIK, et al.,

                        Defendants.
-------------------------------------------------------------------X

**AZRACK**, **United States Magistrate Judge:**

Plaintiff Federal Deposit Insurance Corporation ("plaintiff"), as Receiver for AmTrust Bank ("AmTrust"), has filed a motion seeking sanctions, including an adverse inference, against defendants Pankaj Malik ("Malik") and the Malik Firm (collectively, the "Malik defendants") based on the Malik defendants' alleged destruction of evidence.

The Malik defendants have filed a cross-motion alleging that AmTrust destroyed evidence. The Malik defendants' cross-motion seeks attorneys' fees and unspecified sanctions.

For the reasons stated below: (1) on April 24, 2012, at 12:30 PM, a hearing on plaintiff's motion will be held before me at which Malik must testify regarding the issues specified herein; and (2) the Malik defendants' cross-motion is denied.

Standard for Obtaining an Adverse Inference Instruction

"[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a

reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107–12 (2d Cir. 2001)).

## Plaintiff's Motion

Plaintiff has established the first and third elements for obtaining an adverse inference instruction. However, before ruling on the second element, I will hold a hearing at which Malik will testify.

The Malik defendants' preservation obligation attached in 2008 when they represented AmTrust in the loan transactions at issue.[1] That obligation was violated when employees of the Malik Firm were permitted to delete emails that were neither preserved in hard copy nor backed-up electronically. The fact that the Malik defendants were only able to produce 89 emails concerning the 26 loans at issue strongly suggests that additional emails related to those loans were created, but not preserved. Decl. of Sunny H. Kim ("Kim Decl.") ¶ 16, ECF No. 107-3; see also Kim Decl. ¶ 22 (attesting that a July 1, 2008, email forwarded by Kushu Malik was not produced by the Malik defendants). Thus, plaintiff has satisfied the first element.

Plaintiff has easily met the third element of its spoliation claim based on the July 1, 2008, email forwarded by Kushu Malik. See Kim Decl., Ex. 17 (July 1, 2008, email evidencing flip transaction, the Malik Firm's role as attorney for both AmTrust and the buyer, and Kushu

---

[1] A regulation requiring retention of certain documents can establish the preservation obligation necessary for an adverse inference instruction where the party seeking the instruction is "a member of the general class of persons that the regulatory agency sought to protect in promulgating the rule." Byrnie, 243 F.3d at 109. Relying on Byrnie, plaintiff argues that the Malik defendants had a duty to preserve arising from professional responsibility rules and attorney ethics opinions. Pl.'s Mem. in Support of Mot. for Sanctions at 13 (citing Assoc. of Bar of City of N.Y. Comm. On Prof. and Judicial Ethics, Formal Opinion 2008-1, A Lawyer's Ethical Obligations to Retain and Provide a Client with Electronic Documents (July 2008)). The Malik defendants have not responded to that argument and have made no attempt to explain why those rules and ethics opinions, which require lawyers to preserve electronic documents relating to a representation and seek to protect clients such as AmTrust, do not trigger an actionable duty to preserve under Byrnie. Therefore, I conclude that the Malik defendants had a duty to preserve in 2008 when they represented AmTrust in the loan transactions at issue. I also note that the Malik defendants have not argued that this retention obligation excludes the types of emails at issue in the instant motion.

Malik's attempts to obtain a seller's attorney for the transaction). That email strongly supports plaintiff's attorney malpractice claims.

The Malik defendants contend that plaintiff cannot establish the second element of its claim. The Malik defendants maintain that the firm's emails were not preserved because the firm's technology vendor failed to install a back-up system as requested by Malik and then subsequently misrepresented to Malik that such a system had, in fact, been installed. Malik claims to have only discovered that there was no back-up system in late 2009 or January 2010. Plaintiff, however, has offered testimony from Malik suggesting that she and her employees must have known about the absence of a back-up system prior to late 2009/January 2010. See Kim Decl., Ex. 1, Dep. of Pankaj Malik ("Malik Dep.") 196-97. In light of that testimony, Malik is directed to testify at a hearing about this issue, including, but not limited to:

1. the back-up system allegedly installed in 2003 by Ikramuddin Khan;

2. her and her employees' communications with Khan regarding the back-up system;

3. her and her employees' discovery that no back-up system had, in fact, been installed;

4. attempts by her, her employees and the Malik Firm's technology vendors to retrieve deleted, lost or otherwise inaccessible emails and other electronic documents prior to Thomas Jacoberger's installation of a back-up system in January 2010, see, e.g., Malik Dep. 196-97;

5. other lawsuits that have been brought against the Malik defendants and any electronic discovery that was conducted in those suits;

6. the dates or approximate dates when Khan informed her that there was no way to retrieve emails that had been deleted;

7. why, despite the fact that Khan informed her at some point in 2009 that he could not retrieve emails that had been deleted, she testified that she did not learn about the absence of a back-up system until she retained Jacoberger in 2010, Malik Dep. 98:8–17.

3

Findings adverse to the Malik defendants on some of the above issues would, standing alone, satisfy the requisite second element and, thus, warrant an adverse inference instruction. Plaintiff, however, may also be entitled to an adverse inference instruction concerning the possible destruction of computers in 2009 and 2010. Therefore, at the hearing, Malik shall also testify about:

1. any computers that were replaced and/or discarded by the Malik defendants or their technology vendors in 2009 and 2010;

2. the dates or approximate dates when such computers were replaced and/or discarded;

3. the Malik defendants' policies, procedures and, practices for replacing and discarding computers in 2009 and 2010;

4. the identities and employment dates of the employees and former employees who used or were assigned any computers that were discarded;

5. whether the email accounts of former employees that Jacoberger was able to access and search in December 2010 were stored on the firm's server or on desktop computers.

Plaintiff previously deposed Malik pursuant to Federal Rule of Civil Procedure 30(b)(6). Malik's testimony at the hearing shall also be taken in accordance with Rule 30(b)(6). As such, Malik must be adequately prepared to "testify about information known or reasonably available to the [Malik Firm]" on all of the topics identified above. Fed. R. Civ. P. 30(b)(6). I note that Malik's preparation for her 30(b)(6) deposition appears to have been inadequate. See Malik Dep. 49:3–15, 61:3–8; 152:5–11.

Malik's Cross-Motion

The Malik defendants argue that unspecified sanctions should be awarded for AmTrust's failure to preserve the version of its Seller's Guide that was in effect on December 10, 2008, when AmTrust concluded a fraud investigation into 24 of the loans at issue in this litigation. AmTrust's Seller's Guide is a 290-page document that contains, inter alia, underwriting guidelines. Decl. of A. Michael Furman ("Furman Decl."), Ex. T, ECF No. 107-10. The Malik defendants maintain that the underwriting guidelines are relevant to their argument that AmTrust's failure to properly investigate the financial capacity of the borrowers, and not the Malik defendants' alleged malpractice, was the proximate cause of plaintiff's injuries.

To the extent that the Malik defendants are seeking an adverse inference instruction, that request is denied as the Malik defendants have not established the final element necessary to warrant such an instruction.

The party seeking an adverse inference instruction must "adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed . . . evidence would have been of the nature alleged by the party affected by its destruction." Residential Funding Corp., 306 F.3d at 109 (citations and internal marks omitted). In other words, the moving party "must present extrinsic evidence tending to show that the destroyed [evidence] would have been favorable" to its case. Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am., 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010) (quoting Toussie v. Cnty. of Suffolk, No. CV 01-6716, 2007 WL 4565160, at *8 (E.D.N.Y. Dec. 21, 2007)). In some circumstances, "gross negligence in the destruction . . . of evidence will . . . suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party." Residential Funding Corp., 306 F.3d at 109; see also Pension Committee, 685 F. Supp. 2d at 467 ("Although many courts in this district presume

relevance where there is a finding of gross negligence, application of the presumption is not required."). "[I]ntentional or grossly negligent acts that hinder discovery [can also support an inference that destroyed evidence was harmful to the spoliating party] even if those acts are not ultimately responsible for the unavailability of the evidence . . . ." Residential Funding Corp., 306 F.3d at 110.

This third element is, ultimately, an issue of fact to be determined by the jury. Id. at 109 n. 4. "Accordingly, a court's role in evaluating the 'relevance' factor in the adverse inference analysis is limited to insuring that the party seeking the inference had adduced enough evidence of the contents of the missing materials such that a reasonable jury could find in its favor." Id.

Even assuming that AmTrust's failure to preserve the Seller's Guide constitutes gross negligence, the record before me does not warrant an inference or presumption that the version of the Seller's Guide that AmTrust failed to preserve was favorable to the Malik defendants. Moreover, to the extent that the Malik defendants imply that plaintiff's litigation conduct concerning its production of the Seller's Guide supports a finding that the earlier version of the guide was unfavorable to plaintiff, see Residential Funding, 306 F.3d at 110, such a finding is not justified based on the instant record. Thus, the Malik defendants bear the burden of offering evidence from which a jury could conclude that the earlier version of the guide would have been favorable to the Malik defendants. They, however, have not offered any evidence on this issue. As such, an adverse inference instruction is not warranted.

Finally, I do not find that it would be appropriate to sanction plaintiff by awarding the Malik defendants fees and costs for bringing their cross-motion. As the Malik defendants have not sought any specific relief in their cross-motion, I decline to consider the availability of any other types of sanctions.

6

## Conclusion

Pursuant to the instructions outlined above, on April 24, 2012, at 12:30 PM, a hearing will be held before me on plaintiff's motion. The Malik defendants' cross-motion is denied.

SO ORDERED.

Dated: March 26, 2012
       Brooklyn, New York

                                        /s/
                               JOAN M. AZRACK
                               UNITED STATES MAGISTRATE JUDGE